The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALPHONSA CHANDLER; NICHOLAS GORE; BRENT MERITY; and ERIC VAUGHAN, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL MARINE AND INDUSTRIAL APPLICATORS, LLC, a Florida Corporation,<br><br>Defendant. | No. 2:22-cv-00339-BJR<br><br>**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION** |

## I. INTRODUCTION

Plaintiffs Alphonsa Chandler, Nicholas Gore, Brent Merity, and Eric Vaughn worked for International Marine and Industrial Applicators ("IMIA") as traveling welders. Plaintiffs' primary duties were the same as all IMIA traveler employees; they were required to travel from their homes to a major U.S. Navy port to perform services for marine operations. IMIA paid Plaintiffs the same way it paid all other traveler employees: hourly, plus a purported weekly per diem payment. Because traveler employees are non-exempt, IMIA is required to pay overtime compensation to them when they work more than 40 hours in a week. But IMIA's compensation plan fails to pay these employees the overtime compensation required by the Fair Labor Standards Act (FLSA) and

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 1

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

Washington law. Specifically, IMIA pays overtime based only on the hourly pay portion of a traveler employee's compensation. That is, IMIA excludes the per diem compensation when calculating the regular rate of pay for purposes of overtime compensation. As a result, the company miscalculates the rates at which traveler employees should be paid for overtime hours. This results in traveler employees earning a lower overtime rate than allowed by law and results in a lower overtime rate when compared to local workers, doing the same work.

Under the lenient standard applicable to collective actions, Plaintiffs meet their burden of showing they are similarly situated to other traveler employees who receive per diem compensation. Plaintiffs also meet their burden of showing traveler employees are victims of common policies or plans that violate the law. These employees should therefore receive notice of and an opportunity to join this lawsuit so that their rights may be vindicated collectively.

Plaintiffs respectfully ask the Court to grant their motion and conditionally certify a collective action that comprises the following similarly situated individuals:

> All persons who worked for Defendant, and were classified as travelers and were paid both an hourly rate and per diem compensation at any time from February 18, 2019 to 90 days before the date of final disposition of this action.

Plaintiffs further request the Court enter an order providing the following relief:

**1.** Directing IMIA to produce to Plaintiffs within seven days of the entry of the Court's order:

> A list, in electronic, delimited, and importable format, of all members of the collective action, as defined above, including each member's: (1) name, (2) last known mailing address, (3) last known telephone number, (4) last known personal email address, (5) job title, (6) dates and location of employment, (7) employee number, (8) date of birth, and (9) Social Security number (last four digits only).

**2.** Approving the form and content of Plaintiffs' proposed judicial notice, reminder notice, and a

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 2

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

notice website through which proposed opt-in plaintiffs can submit consent forms, attached as Exhibits 1 – 3 to the Declaration of Hardeep S. Rekhi in Support of Plaintiffs' Motion for Conditional Certification ("Rekhi Decl.").

**3.** Authorizing Plaintiffs to send the proposed judicial notice to all members of the collective action via U.S. Mail and email, and via website, and to send the reminder notice fifteen days before the expiration of the opt-in period; and

**4.** Providing members of the collective action sixty days from the time notice is sent to opt-in and join the lawsuit.

## II. STATEMENT OF FACTS

**A.    IMIA employs travelling welders, shipfitters, pipefitters, and other similarly situated workers throughout the country.**

Defendant IMIA is in the business of providing structural services for marine operations. This includes repairing and maintaining ships, such as Washington's ferries. While Defendant is headquartered in Alabama, it is a Florida Corporation. Dkt. No. 22 (Defendant's Answer to Plaintiffs' Second Amended Class and Collective Action Complaint for Damages) ¶ 3.5. And it does business throughout the country. Dkt. No. 22 ¶ 3.5.

Defendant boasts it is "established as the premier Marine Preservation and Structural Services company in the United States," with regional offices in every major U.S. Navy port across the country. *See* Dkt. No. 22 ¶ 4.1. Defendant estimates its employees providing these services total more than 200 individuals working in Virginia, Washington, and Hawaii, with more than 100 of those individuals working as welders, 35 as shipfitters/pipefitters, and others in similar positions. *See* Dkt. No. 22 ¶ 4.3. Plaintiffs were employees who provided these services for IMIA in Washington and whom IMIA classified as travelers. Rekhi Decl., Exs. 4-7. At the time of hiring, Mr. Chandler and Mr. Merity were residents of Alabama. *Id.*, Exs. 4-5. Mr. Gore was a resident of North Carolina, and Mr. Vaughan was a resident of Oregon. *Id.*, Exs. 6-7. Defendant required each

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 3

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

of the four Plaintiffs to travel from their home states to King County, Washington to perform welding services in Washington State for IMIA. *See* Rekhi Decl., Exs. 1-4; Dkt. No. 22 ¶¶ 3.1-3.3. Mr. Vaughan also worked for Craft and Technical Solutions (CTS), a subsidiary of IMIA at its ports in other states. Declaration of Eric Vaughan in Support of Plaintiffs' Motion for Conditional Certification ("Vaughan Decl.") ¶ 4. Defendant employs hourly, non-exempt workers, classified as travelers both inside and outside of Washington. Dkt. No. 22 ¶ 3.6.

**B.    IMIA had a company-wide policy governing traveler compensation.**

Plaintiffs and similarly situated employees have all worked for IMIA as travelers throughout the country. IMIA paid Plaintiffs and all similarly situated employees the company designated as travelers on an hourly basis. Plaintiffs earned a starting hourly rate of $26.75. Rekhi Decl., Exs. 4-7. In addition to their hourly rate, IMIA pays all traveler employees a weekly per diem that is governed by the company's uniform Per Diem Procedure. Rekhi, Ex. 8.

IMIA's Per Diem Procedure is "applicable to all employees of International Marine and Industrial Applicators, LLC (IMIA) and employees working for IMIA through Craft and Technical Solutions (CTS)." *Id*. ¶ 1.2. The procedure formalizes IMIA's standards for per diem across all its locations. Under IMIA's Per Diem Procedure, an employee who engages in "out-of-town travel" is eligible for per diem pay. Out of town travel is defined as being at least 75 miles away from the employee's "Tax Home." *Id*. The tax home is defined as the entire city or general area where an employee's main place of business or work is located or, if the employee has no main place of business, where the employee maintains his or her family home. *Id*. In essence, IMIA pays its traveler employees a weekly per diem if they are more than 75 miles away from their permanent family residence.

The weekly per diem amount fluctuates based on the number and length of shifts worked during the week. The weekly per diem compensation during Plaintiffs' employment was $141

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 4

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

dollars for each daily shift of more than six hours and that per diem compensation was paid out on a weekly basis. The weekly per diem compensation included both Lodging (referred to as DPDL) and Meal and Incidental Per Diems (Referred to as DPMI). The lodging per diem amounts to $77 per day. For example, during the week of May 4, 2020, Plaintiff Merity worked five shifts. Rekhi Decl., Ex. 9 at IMIA-AC000428. He received a DPDL per diem payment for that week that totaled $385.00. *Id*. at IMIA-AC000429. The total weekly DPDL compensation divided by the number of shifts comes out to $77 ($385 / five shifts). This holds true for the other Plaintiffs as well. *See id*., Exs. 10-12. Similarly, using the same method, the total weekly Meal and Incident per diem comes out to $64 per day. *Id*., Exs. 9-12.

Travelers receive less weekly per diem compensation if the employee calls in sick. This is true even though the employee remains away from their Tax Home during the sick day. For example, during the week of November 4, 2019, Plaintiff Chandler worked four shifts. Rekhi Decl., Ex. 13. In the middle of the work week, he called in sick. *Id*. He received sick pay for that day, but his weekly per diem was reduced even though he did not fly home to Alabama on the day he was sick. *See* Declaration of Alphonsa Chandler in Support of Plaintiffs' Motion for Conditional Certification ("Chandler Decl.") ¶ 4.

IMIA also reduced the weekly per diem payment amount for each day an employee worked fewer than six hours. In at least one instance, Plaintiff Chandler worked a shift of five and one-half hours and his weekly per diem payment was reduced for that week such that he received no per diem for his shift of less than six hours. *See* Rekhi Decl., Ex. 14.

IMIA's weekly per diem compensation was directly tied to the number of six-hour shifts worked. The weekly per diem payments were not based on the actual number of days that a traveler employee was away from his or her Tax Home.

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 5

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

Regardless of where in the country the employee worked, travelers were paid in a similar manner: hourly pay and weekly per diem pay. Chandler Decl. ¶ 6, Merity Decl. ¶ 7, Vaughan Decl., ¶ 7, Gore Decl ¶ 5. Each Plaintiff's time records establish they were paid per diem based on this policy. Plaintiff Vaughan worked both for IMIA in Washington and outside of Washington, when working for CTS in Maine. Vaughan Decl. ¶¶ 4-5. The pay practices were identical at both locations. *Id.* Plaintiffs' primary duties were the same as other traveler employees; Plaintiffs were required to travel away from their Tax Home to perform ship and dock repair services. Chandler Decl. ¶ 5, Merity Decl. ¶ 6, Vaughan Decl. ¶ 6, Gore Decl. ¶ 4.

**C.   Because Defendant excluded per diem payments from the regular rate, the company failed to pay traveler employees the correct overtime rate when they worked more than 40 hours in a week.**

IMIA requires non-exempt travelers to track their work hours. *See generally*, Rekhi Decl. Ex. 15. IMIA has retained these records and produced them at Plaintiffs' request. Rekhi Decl. ¶ 8. IMIA pays employees it classifies as travelers on a per-hour basis, including an overtime premium for work in excess of 40 hours per week. *See* Rekhi Decl., Exs. 9-14, 16 (examples of Plaintiffs' payroll documents).

IMIA did not treat the per diem payments as compensation. Rather, when calculating the regular rate of pay, IMIA excluded per diem from the calculation. If a traveler employee works overtime hours in a week in which the employee also earns a weekly per diem pay, IMIA does not include the weekly per diem pay in its overtime calculation.

For example, Plaintiff Chandler worked 60 hours during the workweek beginning March 16, 2020 and ending March 22, 2020. Rekhi Decl., Ex. 11 at IMIA-AC000047. Defendant paid him $29 per hour, plus per diem pay in the amount of $846, for a regular rate of $50.15. *See id.* But Defendant paid Plaintiff Chandler an overtime rate of just $43.50 per hour. *See id.* Defendant

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 6

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

therefore failed to pay Plaintiff one and one-half times his actual regular rate of pay for the hours he worked in excess of forty for that workweek.

Plaintiff Gore was treated similarly. He worked 58 hours during the workweek of December 9, 2019 to December 15, 2019. Rekhi Decl., Ex. 16. Defendant paid him $26.75 per hour, plus per diem compensation in the amount of $846, for a regular rate of $47.90. *See id*. Defendant paid an overtime rate of just $40.12 for the 18 hours of overtime work, which was less than one and one-half times Plaintiff Gore's regular rate of pay for the hours he worked in excess of forty for that workweek. *See id*.

Defendant also did not properly pay overtime compensation to Plaintiff Merity. As one example, Plaintiff Merity worked 56 hours during the workweek from May 4, 2020 to May 10, 2020. Rekhi Decl., Ex. 9 at IMIA-AC000429. Defendant paid him $29.25 per hour, plus per diem compensation in the amount of $705, for a regular rate of $46.88. *See id*. But Defendant paid Plaintiff Merity an overtime rate of just $43.87 per hour for the 16 hours of overtime work. *See id*. Defendant therefore did not pay him one and one-half times his actual regular rate of pay for the hours he worked in excess of forty for that workweek.

And finally, Plaintiff Vaughan worked 58 hours during the workweek beginning August 19, 2019 and ending August 25, 2019. Rekhi Decl., Ex. 10 at IMIA-AC000677. Defendant paid him $26.75 per hour, plus per diem compensation totaling $846, for a regular rate of $47.90. *See id*. Defendant paid Plaintiff Vaughan an overtime rate of just $40.12 for the 18 hours of overtime work, which was less than one and one-half times his regular rate of pay for the hours he worked in excess of forty for that workweek. *Id*.

Defendant's Per Diem Pay Procedures is the same for all traveler employees and uniformly results in a lower overtime rate of pay than permissible under Washington law and the FLSA.

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 7

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

## III. COLLECTIVE CLAIMS

**A. Defendant IMIA miscalculates travelers' regular rate of pay.**

The "regular rate" of pay "at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," subject to certain enumerated exceptions. 29 U.S.C. § 207(e). Although per diem can be excluded from an employee's regular rate, 29 U.S.C. § 207(e)(2); see also 29 C.F.R. § 778.217(b), the "'regular rate' of pay ... cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract." 29 C.F.R. § 778.108. Thus, IMIA may not unilaterally declare that per diem compensation should be excluded from the regular rate of pay for purposes of overtime compensation.

When analyzing this issue, the Fifth Circuit relied in part on guidance from the Department of Labor. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010). The Court pointed out that the Department of Labor requires weekly per diem compensation be included when calculating the regular rate of pay "if the amount of per diem or other subsistence payment is based upon and thus varies with the number of hours worked per day or week." *Id.* (citing to DLI Field Operations Handbook).

The Ninth Circuit has come to a similar conclusion in *Clarke v. AMN Servs., LLC*, 987 F.3d 848, 854 (9th Cir.), *cert. denied*, 142 S. Ct. 710, 211 L. Ed. 2d 400 (2021). The Ninth Circuit has laid out some considerations to determine whether a per diem payment functions as compensation that must be included in the regular rate of pay. *Clarke v. AMN Servs., LLC*, 987 F.3d 848, 854 (9th Cir.), *cert. denied*, 142 S. Ct. 710, 211 L. Ed. 2d 400 (2021). In its analysis, the Court stated: "whether payments increase, decrease, or both based on time worked provides an important indication as to whether the payments are functioning as compensation rather than

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 8

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

reimbursement." *Id*. The Court goes on to state that other considerations include:

> whether the payments are made regardless of whether any costs are actually incurred, and whether the employer requires any attestation that costs were incurred by the employee …. the amount of the per diem payment relative to the regular rate of pay may be relevant to whether the purported per diem functions as compensation or reimbursement. …. And the function analysis may also consider whether the payments are tethered specifically to days or periods spent away from home ....

*Id*.

Here, it is unequivocally true that IMIA's per diem payments are based on the hours or shifts a traveler works. The weekly per diem payments are based entirely on how many shifts of six hours or more the employee worked during the week. If the employee calls in sick for one day or works fewer than six hours on a day, that employee receives a smaller weekly per diem payment. For example, during the week of September 14, 2020, Mr. Merity was scheduled to work six shifts, but he ended up calling in sick for two shifts during the middle of the week. Mr. Merity remained away from his tax home during this sick time, and incurred lodging, meal and incidental expenses. Declaration of Brent Merity in Support of Plaintiffs' Motion for Conditional Certification ¶¶ 3-4. While Mr. Merity was paid his hourly pay for sick leave for those days, he was not paid his per diem for those sick days. *See* Rekhi Decl., Ex. 17. Other employees were similarly treated. Indeed, when Plaintiff Chandler, worked a 5.5-hour day, he was not paid per diem pay. *See id*., Ex. 14. This factor weighs in favor of finding IMIA's weekly per diem compensation functioned as compensation, rather than a reimbursement.

IMIA's per diem payments are not tethered specifically to days or periods spent away from home. Plaintiffs were not required to report how many days they spent away from their home. There is no evidence that per diem compensation was provided for days spent away from the Tax Home. To the contrary, none of the Plaintiffs were paid per diem compensation for weekend days

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 9

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

when they were away from their Tax Home between two or more continuous workweeks where IMIA required them to be at a job away from home. For example, Plaintiff Merity often worked 6 days a week. Merity Decl. ¶ 5. One such example is during the week of June 3, 2019 through June 9, 2019. He worked six days during the week, with only one day off. His weekly per diem compensation did not compensate him for remaining away from his Tax Home on his off day, even though he could not make the 13-hour roundtrip flight from Washington to Alabama in a single day. *Id*. And, as set forth above, IMIA does not pay per diem compensation when a traveler has a sick day, but is still away from their Tax Home. This factor also weighs in favor of finding IMIA's weekly per diem compensation functioned as compensation, rather than a reimbursement.

Another consideration the Ninth Circuit looked at was "the amount of the per diem payment relative to the regular rate of pay." *Clarke*, 987 F.3d at 854. Here, IMIA's per diem payments amount to nearly 50 percent of traveler employees' compensation. At the outset of their employment, IMIA paid Plaintiffs $26.75 per hour and $141 of per diem compensation per six-hour shift. *See* Rekhi Decl., Ex. 12 at IMIA-AC000196. For a six-hour day, each therefore earned $160.50. Their per diem of $77 per day was therefore nearly 50% percent of their compensation. *Id*. This factor weighs in favor of finding IMIA's weekly per diem compensation functioned as compensation, rather than a reimbursement.

Other Circuits have come to similar conclusions. Where "the amount of per diem varies with the amount of hours worked, the per diem payments are part of the regular rate in their entirety." *Gagnon v. United Technisource, Inc.*, 607 at 1041 (5th Cir. 2010); *Howell v. Advantage RN, LLC*, 401 F. Supp. 3d 1078, 1090 (S.D. Cal. 2019) (finding that a per diem that "is paid weekly and adjusted based on hours or shifts worked makes the per diem function more as remuneration for hours worked than as reimbursement for expenses incurred on behalf of Defendant.").

IMIA uniformly paid all Plaintiffs and travelers an incorrect overtime rate of pay when they

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 10

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

worked more than 40 hours a week in violation of Washington law and the FLSA.

## IV.  AUTHORITY AND ARGUMENT

**A.    The Court should conditionally certify the proposed collective action and allow Plaintiffs to provide accurate and timely notice of the case to similarly situated employees.**

The FLSA expressly authorizes employees to sue for unpaid overtime wages in a "collective action" on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). The collective action mechanism serves the "broad remedial purpose" of the FLSA because it avoids the "multiplicity of duplicative suits," by allowing employees whose claims are often small and not likely to be brought on an individual basis to join together and "pool[ ] resources" to lower costs and efficiently resolve common issues of law and fact. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-73 (1989); *see also Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011) ("FLSA collective actions serve to lower the cost of litigation for individual claimants and promote efficiency in resolution of claims and the use of judicial resources.").

The benefits of a collective action depend on employees receiving accurate and timely notice concerning the pendency of the case, so they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. Unlike a class action under Federal Rule of Civil Procedure 23, in which employees are members of the class unless they affirmatively opt out, each individual member or "party plaintiff" of an FLSA collective action must affirmatively opt into the case by filing a written consent to join the suit. Until those individuals opt in, their statute of limitations continues to run, making timely notice critical. *See Bollinger*, 761 F. Supp. 2d at 1122. It is therefore vital to "provide potential class members with 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Randolph v. Centene Mgmt. Co.*, No. C14-5730 BHS, 2015 WL 2062609, at *4 (W.D.

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 11

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

Wash. May 4, 2015) (*quoting Hoffmann-La Roche*, 493 U.S. at 170).

Courts follow a two-tiered approach to determine whether a case should be conditionally certified as a collective action. *See Bollinger*, 761 F. Supp. 2d at 1119 (district courts in the Ninth Circuit "have adopted the two-tiered case-by-case approach followed by the majority of courts"); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218, 1219 (11th Cir. 2001) (two-tiered approach is "an effective tool for district courts to use in managing these often complex cases"). At the first stage, the court determines whether the potential plaintiff is sufficiently likely to be similarly situated to justify mailing the Hoffmann-La Roche notice. *See Bazzell v. Body Contour Center, LLC*, No. C16-0202JLR, 2016 WL 3655274, at *4 (W.D. Wash. July 8, 2016); *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102, 1105 (10th Cir. 2001). Once notice has been issued, the opt-in period has expired, and discovery has been completed, courts often make a second-stage, final determination as to whether the opt-ins are similarly situated. *See Thiessen*, 267 F.3d at 1102-03; *Hipp*, 252 F.3d at 1217-18.

With this motion, Plaintiffs request the Court take the first step in the collective action process by finding traveler employees are sufficiently likely to be similarly situated to justify providing them with accurate and timely notice pursuant to 29 U.S.C. § 216(b).

**B.     Plaintiffs meet the lenient similarly situated standard at this early stage of the case.**

The standard for determining whether individuals are similarly situated is "lenient" and "usually results in certification." *Bollinger*, 761 F. Supp. 2d at 1119 (quoting *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. 2004)). "[T]he similarly situated requirement of 29 U.S.C. § 216(b) is considerably less stringent than the requirement of Fed. R. Civ. P. 23(b)(3) that common questions predominate." *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 n. 2 (E.D.N.Y. 1988) (internal marks omitted); *see also Troy v. Kehe Food Distributors,*

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 12

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

*Inc.*, 276 F.R.D. 642, 649 (W.D. Wash. 2011) (noting "FLSA collective actions are not subject to the numerosity, commonality, and typicality rules of a class action suit brought under Rule 23."). The lenient standard is justified at the first stage because the plaintiff has not had broad discovery of the class, and the court therefore has "minimal evidence." *See Orquiza v. Walldesign, Inc.*, No. 2:11-CV-1374 JCM (CWH), 2012 WL 3561971, at *2 (D. Nev. Aug. 16, 2012) (citations omitted). Accordingly, the court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Douglas v. Xerox Bus. Servs. LLC*, No. C12-1798-JCC, 2014 WL 3396112, at *3 (W.D. Wash. July 10, 2014) (citations omitted). The court need only satisfy itself that there is a "reasonable basis" for plaintiff's claims of class-wide injury. *Bollinger*, 761 F. Supp. 2d at 1119 (quoting *Khadera v. ABM Indust., Inc.*, 701 F. Supp. 2d 1190, 1194 (W.D. Wash. 2010)).

In this regard, the plaintiff must make "modest factual showing" that he and prospective class members were "victims of a common policy or plan that violated the law." *Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 825 (E.D. Mich. 2009) (citations omitted). The plaintiff must demonstrate that his position was "similar, but not identical, to the positions held by the putative class members." *Id.* (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006)). Plaintiffs satisfy this lenient burden.

The proposed collective of traveler employees includes all employees who were paid an hourly rate and weekly per diem compensation. For all such employees, Defendant unlawfully failed to include per diem compensation in the regular rate of pay when calculating the rate for overtime compensation.

Plaintiffs assert this practice violates the law. Whether they are correct will present legal questions that are the same for all proposed collective action members. *See Randolph*, 2015 WL 2062609, at *2 ("For conditional certification, the Court requires little more than 'substantial

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 13

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

allegations that the putative class members were together the victims of a single decision, policy, or plan.'" (quoting *Khadera*, 701 F. Supp. 2d at 1194)); *see also Bazzell*, 2016 WL 3655274, at *6 (finding plaintiffs "similarly situated" because they were classified as exempt and not paid overtime, and conditionally certifying collective across 12 states); *Labrie v. UPS Supply Chain Solutions, Inc.*, No. C08-3182 PJH, 2009 WL 723599 at *5 (N.D. Cal. Mar. 18, 2009) ("All that is necessary at this stage is for the plaintiffs to establish that the class was subject to a common policy that allegedly violates the overtime provisions of the FLSA, which they have done.").

The claims at issue are also are well-suited to class-wide treatment and should easily satisfy the low threshold standard for conditional collective action certification. *See Ware v. T-Mobile USA*, 828 F. Supp. 2d 948, 951 (M.D. Tenn. 2011) (quoting *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 585 (6th Cir. 2009)) ("employees may be similarly situated if their claims are merely 'unified by common theories of defendants' statutory violations even if the proofs of these theories are inevitably individualized and distinct'").

In short, conditional certification of a class of employees who worked for IMIA as travelers is proper.

**C. The proposed notice should be judicially approved, and IMIA should produce identifying information for all similarly situated employees.**

The benefits provided by the collective action mechanism "depend on employees receiving accurate and timely notice concerning the pendency of the collection action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 392 U.S. at 170. Early court intervention in the notice process is necessary "to assure that the task is accomplished in an efficient and proper way." *Id.* at 170–71. It is also necessary because the claims of proposed opt-in plaintiffs are being extinguished or diminished by the statute of limitations running on their claims. *Bollinger*, 761 F. Supp. 2d at 1122. Thus, the consequence of the opt-in procedure is self-evident: "every day

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 14

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

that passes is a day of damages each potential opt-in plaintiff will be unable to recover. Court-facilitated notice will prevent the continued erosion of these claims." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007).

  1. <u>The proposed notice is accurate and informative and the methods for providing notice are appropriate.</u>

Judicially authorized notice of a collective action must be "timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172. Plaintiffs' proposed notice forms will provide current and former employees with an accurate description of this lawsuit as well as their rights under the FLSA. *See* Rekhi Decl., Exs. 1-3. The Court should adopt these forms of notice.

Plaintiffs request that the Court authorize dissemination of the notices through mail, email, and a website through which proposed opt-in plaintiffs can submit consent forms. Courts across the country agree that issuance of notice through these methods will ensure that all proposed collective members are reached as soon as possible. *See Bazzell*, 2016 WL 3655274, at *6–8 (approving notice via U.S. mail, email, and posting); *see also Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015) (holding that sending notice by mail and email "advances the remedial purpose of the FLSA" while noting the "current nationwide trend" towards emailing judicial notice in FLSA cases); *Rhodes v. Truman Med. Ctr., Inc.*, No. 4:13-CV-00990-NKL, 2014 WL 4722285, at *5 (W.D. Mo. Sept. 23, 2014) ("[E]mail provides an efficient and cost-effective means of disseminating notice documents and has been endorsed by courts in the past."); *Prejean v. O'Brien's Response Mgmt., Inc.*, No. CIV.A. 12-1045, 2013 WL 5960674, at *5 (E.D. La. Nov. 6, 2013) (granting request for notice by mail and email since "both e-mail and first-class mail [are] both routine and reasonably calculated to accomplish the broad remedial goals of the notice provision of the FLSA"). One court recognized more than seven years ago, the ubiquity of email in people's everyday lives, stating:

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 15

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

> The Court notes that in 2015 it should rarely be entertaining arguments about the appropriateness of email notice. Email is not the wave of the future; email is the wave of the last decade and a half. Many people use their email address as their primary point of contact, and in almost every situation, more opt-in plaintiffs will be on notice of a pending collective action if the putative class members are also notified via email.

*Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-CV-00603-RP, at *2 n.1 (W.D. Tex. Mar. 16, 2015); *see also Pippins v. KPMG LLP*, No. 11 CIV. 0377, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today, that the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate."). The Court should approve sending notice via U.S. mail, email, and by website posting to members of the proposed collective to inform them of their rights to participate in this lawsuit.

Plaintiffs request that the notice period be set for sixty days, which this district has previously approved. *See Bazzell*, 2016 WL 3655274, at *6. Case law in the Ninth Circuit "indicates that a 60-day notice period is appropriate." *Id.* at *6 n.8 (citing *Senne v. Kan. City Royals Baseball Corp.*, No. 14-CV-00608-JCS, 2015 WL 6152476, at *19 (N.D. Cal. Oct. 20, 2015) ("[T]imeframes of sixty to ninety days appear to have become the presumptive standard in this District.")).

   2.   <u>Reminder notice is appropriate.</u>

Plaintiffs also ask that the Court authorize them to send a reminder notice, attached to the Declaration of Hardeep S. Rekhi as Exhibit 2, to proposed collective members within fifteen days prior to the opt-in deadline. "The purpose of a step-one notice is to inform potential class members of their rights," and it is ultimately the responsibility of the proposed class member to either join or not join the case. *Knox v. Jones Grp.*, 208 F. Supp. 3d 954, 964 (S.D. Ind. 2016). The *Knox* Court was "unconvinced that any harm will result from potential class members being informed of their rights twice." *Id.* at 964–65 (finding "[d]eadline reminders are commonplace and will not appear to

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 16

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

endorse the merits of the case."). Other courts have similarly allowed reminder notices. *See, e.g., Bazzell*, 2016 WL 3655274 at *6 (approving sending of reminder letter on or about 15 days before opt-in deadline); *Thomas v. Kellogg Co.*, No. C13-5136 RBL, 2014 WL 716152 at *3 (W.D. Wash. Jan. 9, 2014) (approving a post-card reminder to all class members who did not return opt-in form within 30 days); *Kidd v. Mathis Tire & Auto Serv., Inc.*, No. 2:14-CV-02298-JPM, 2014 WL 4923004, at *3 (W.D. Tenn. Sept. 18, 2014) (finding reminder proper); *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate."). In keeping with the purpose of the two-step certification process, this Court should approve the use of a reminder notice in this matter.

3. <u>The Court should order IMIA to produce information necessary for Plaintiffs to disseminate notice to the proposed collective.</u>

The Court should also order IMIA to provide Plaintiffs with a list of all potential opt-in plaintiffs and their contact information. The identification of these individuals is necessary for Plaintiffs to provide them with notice of the action as contemplated by the FLSA. *See Hoffmann-La Roche*, 493 U.S. at 170 (affirming district court decision permitting discovery of the names and addresses of the putative class).

To enable notice to be sent in a timely and effective fashion, Plaintiffs also asks that the Court direct IMIA to produce, within seven days of its order, an electronic list of all persons who fit within the proposed class, to include each proposed collective member's: (1) name, (2) last known mailing address, (3) last known telephone number, (4) last known personal email address, (5) job title, (6) dates and location of employment, (7) employee number, (8) date of birth, and (9)

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 17

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

Social Security number (last four digits only).[1] Such an order is common in this circumstance and necessary to facilitate effective notice. *See, e.g., Thomas*, 2014 WL 716152 at *3 (ordering defendants to provide contact information, including last four digits of social security numbers of members whose notices were returned without forwarding addresses and to produce the data "in a manipulable electronic format such as Microsoft Excel."). The information requested will help Plaintiffs' counsel to promptly disseminate the Court-approved notice to the proposed class and to handle returned mail, and it should be provided by Defendant.

## V. CONCLUSION

For all of the foregoing reasons, the Court should grant conditional certification to the proposed collective action, approve the proposed notice plan, and order production of the class list.

---

[1] Last four digits of Social Security number and date of birth are useful in tracking changes of address information.

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 18

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

RESPECTFULLY SUBMITTED AND DATED this 1st day of July, 2022.

REKHI & WOLK, P.S.

By: *s/ Hardeep S. Rekhi*
Hardeep S. Rekhi, WSBA #34579
Email: hardeep@rekhiwolk.com
Gregory A. Wolk, WSBA #28946
Email:  greg@rekhiwolk.com
529 Warren Avenue North, Suite 201
Seattle, Washington 98109
Telephone: (206) 388-5887
Facsimile: (206) 577-3924

Toby J. Marshall, WSBA #32726
Email:  tmarshall@terrellmarshall.com
Erika L. Nusser, WSBA #40854
Email: enusser@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone:  (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiff*

Plaintiffs' Motion for Conditional Certification
Case No.: 2:22-cv-00339-BJR - 19

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

# CERTIFICATE OF SERVICE

I hereby certify that I caused the document to which this certificate is attached to be delivered to the following as indicated:

*Attorneys for Defendant International Marine and Industrial Applicators, LLC*

Melissa Mordy, WSBA #41879
Kate Tylee Herz, WSBA #40640
DAVIS WRIGHT TREMAINE LLP
929 180th Avenue, Suite 1500
Bellevue, WA 98004-4786
Telephone: 425.646.6100
Fax: 425.646.6199
Email: missymordy@dwt.com
        katetyleeherz@dwt.com

Katie Loberstein, WSBA #51091
Scott Prange, WSBA #53980
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: 206.622.3150
Fax: 206.757.7700
Email: katieloberstein@dwt.com
        scottprange@dwt.com

☐ Messenger
☐ U.S. Mail, postage prepaid
☐ Federal Express
☐ Facsimile
☐ Email
☒ ECF

Declared under penalty of perjury under the laws of the state of Washington dated at Seattle, Washington this 1st day of July, 2022.

*/s/ Jeff Mead*
Jeff Mead, Paralegal

PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
CASE NO.: 2:22-cv-00339-BJR - 20

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924