The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALPHONSA CHANDLER; NICHOLAS GORE; BRENT MERITY; and ERIC VAUGHAN, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL MARINE AND INDUSTRIAL APPLICATORS, LLC, a Florida Corporation,<br><br>Defendant. | No. 2:22-cv-00339-BJR<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL** |

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL - i
CASE NO.: 2:22-cv-00339-BJR

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

## I. INTRODUCTION

Plaintiffs Alphonsa Chandler, Nicholas Gore, Brent Merity, and Eric Vaughn, individually and on behalf of those similarly situated, and Defendant International Marine and Industrial Applicators (IMIA) have reached a proposed collective and class action settlement of (1) unpaid overtime claims under the Fair Labor Standards Act (FLSA) and (2) unpaid overtime and related wage and hour claims under Washington state law. Through this motion, Plaintiffs respectfully request that the Court preliminarily approve the proposed settlement. As detailed below, the proposed settlement and plan of distribution are the product of non-collusive, arm's-length negotiations by experienced and informed counsel.

This settlement is a fair, adequate, and reasonable resolution of the parties' *bona fide* dispute as to liability and damages under FLSA and Washington law. Accordingly, the parties respectfully request that the Court: (1) preliminarily approve the settlement; (2) certify the proposed Rule 23 Washington Class for purposes of settlement; (3) appoint Rekhi & Wolk, P.S. and Terrell Marshall Law Group PLLC as Class Counsel; (4) approve the form and distribution method of the three proposed Notices of Settlement; and (5) schedule the final approval hearing and deadlines for briefing on the question of whether the proposed settlement should be finally approved as fair, reasonable, and adequate under Rule 23(e).

## II. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On February 18, 2022, Plaintiffs filed a class action complaint in King County, Washington. The case was removed to this Court and the complaint subsequently amended to include a FLSA collective action. Dkt. No. 1. Plaintiffs allege that Defendant failed to properly pay Plaintiffs and other similarly situated employees for all hours worked and all required overtime wages under the Washington Minimum Wage Act, RCW 49.46 *et seq.*, the Washington Wage Rebate Act, RCW 49.52 *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. Dkt. No. 18.

On July 1, 2022, Plaintiffs moved to conditionally certify a nationwide FLSA collective action. Dkt. No. 28. While the motion was pending, the parties successfully mediated the case and

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 1

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

entered into a settlement agreement.

B.  **Claims**

Plaintiffs worked for Defendant as traveling welders. *Id*. at 1. Plaintiffs, like all IMIA traveler employees, were required to travel from their homes to a major U.S. Navy port to perform services for marine operations. *Id*. IMIA paid all non-exempt traveler employees an hourly wage and also provided per diem. *Id*. IMIA's non-exempt traveler employees were entitled to overtime compensation if they worked more than 40 hours in a week. *Id*.

Plaintiffs allege IMIA failed to pay all the overtime compensation required under the FLSA and Washington law. *Id.* at 1-2. Specifically, IMIA paid overtime based only on the hourly pay portion of a traveler employee's compensation, excluding the per diem compensation an employee received when calculating the regular rate of pay. *Id.* at 2. This resulted in traveler employees earning a lower overtime rate than they were entitled to by law. *Id.*

Defendant denies liability and contends that its method of paying overtime compensation and providing a per diem complied with state and federal overtime laws, and contends that the per diem was properly excluded from the regular rate because it was a reasonable expense reimbursement and not wages, among other defenses. Dkt. No. 22. Decl. of Hardeep S. Rekhi in Support of Pls.' Mot. for Prelim. Approval ("Rehki Decl."), Ex. 1.

C.  **Discovery and Mediation**

The parties engaged in discovery by exchanging written discovery requests and responses. Rekhi Decl. ¶ 2. Defendant produced hundreds of pages of documents, including company policies, job descriptions, and performance evaluations; payroll data; per diem payments; and timekeeping data for work done between February 18, 2019, and September 19, 2022 (the "class period"). *Id.*

The parties subsequently agreed to mediation, which took place on September 12, 2022, with Teresa Wakeen serving as the third-party mediator. The parties reached an agreement and executed a memorandum of understanding on November 7, 2022. The final Settlement Agreement was fully executed on January 18, 2023. Rekhi Decl., Ex. 1.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 2

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

### D. The Settlement

#### 1. Beneficiaries of the Settlement

The proposed settlement resolves the claims brought under both federal and Washington state law. There are two separate settlement groups as defined below:

> "Washington Class Member" or "WCM" shall include any individual who worked as a non-exempt traveler and received per diem for Defendant in Washington state at any time from February 18, 2019, until September 19, 2022. The total number of putative WCMs is currently estimated to be 555.

> "FLSA Collective Member" or "FCM" shall include any individual who worked as a nonexempt traveler and received per diem for Defendant at any time from February 18, 2019 until September 19, 2022. The total number of putative FMCs is currently estimated to be 1,157.

The parties stipulated to certification of the Washington Class and the FLSA Collective for settlement purposes only. *Id.* ¶ 15-16.

#### 2. Settlement Amount and Initial Allocation of Settlement Funds

The proposed settlement resolves the claims for a gross settlement amount of $2,500,000. *Id.* ¶ 19. The Settlement Agreement allocates payments as follows:

- $750,000 ("Class Fund") will be allocated to resolve claims for work performed during the class period in this lawsuit with all WCMs who do not opt out of the Washington Class. *Id.* ¶ 19(a).

- Up to $1,000,000 will be allocated to resolve claims in this lawsuit with all FCMs who submit valid Claim Forms ("FLSA Claims Made Fund") for work performed during the period of February 18, 2019, until September 19, 2022 and that is within the 3 year statute of limitations (that is 3 years prior to the date of the opt-in form). *Id.* ¶ 19(b).

- $750,000 will be allocated to Plaintiffs' counsel's attorneys' fees and costs as well as enhancements for Plaintiffs (the "Attorney Fee and Enhancements Fund"). *Id.* ¶ 19(c). This is inclusive of, if approved, a $10,000 enhancement award for each Plaintiff. *Id.* ¶ 23.

Plaintiffs' counsel will petition the Court for approval of these amounts at final approval. *Id.* Plaintiffs' counsel will also file a separate petition for attorney fees and costs. *Id.* ¶ 11(c); Rekhi Decl. ¶ 6. Any unapproved amounts of the Attorney Fee and Enhancements Fund will be reallocated allocations on a *pro rata* basis to the Class Fund and the FLSA Claims Made Fund. *Id.* ¶ 24.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 3

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

Total estimated damages of all FCMs and WCMs is approximately $5.3 million based on individual payroll data and timekeeping data obtained from Defendant. *Id.* ¶ 8. The $2,500,000 Gross Settlement Amount results in an average recovery of approximately $1,512 *after* deduction of the Attorney Fee and Enhancements Fund. *Id.*

### 3.  Notice of Settlement and Release of Claims

The parties request approval of two Notices of Settlement: (1) one to FCMs only ("FLSA Notice"); and (2) one to WCMs who are also FCMs ("FLSA and Rule 23 Notice"). The Notices are tailored to each group receiving the Notice, which will help avoid confusion regarding the settlement. The parties propose Simpluris as the settlement administrator responsible for processing and disseminating the Notices and settlement funds. If the Court approves the proposed Notice forms, Simpluris will mail the Notices via U.S. mail to both WCMs and FCMs at their last known addresses as updated through available address databases. Rekhi Decl. ¶ 9.

The Notices will explain the lawsuit, how the settlement was reached, how settlement awards were calculated, and what the benefits and consequences to settlement are. The Notices further provide information as to who Plaintiffs' counsel are and how they will be paid. The Notices and Settlement Agreement set forth the options that WCMs and FCMs have with respect to the settlement and the consequences that flow from each option in terms of payment and dismissal and release of claims. Settlement Agreement ¶¶ 31-32; Exs. A-B.

### 4.  Final Distribution of Settlement Funds to SCCMs

If the Court grants preliminary approval of the proposed settlement, WCMs and FCMs will have 60 days from the issuance of the Notices to respond. Settlement Agreement ¶ 31. Those FCMs who complete the Release of Claims Form and those WCMs who do not timely opt out of the settlement ("Settlement Class/Collective Members" or "SCCM") will have settlement proceeds distributed to them on a *pro rata* basis, as explained above. No part of the Settlement Amount shall be retained by Defendant other than those portions of the FLSA Claims Made Fund allocated to FCMs who do not opt-in and participate in the settlement. Settlement Agreement ¶¶ 19(a-b), 20.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 4

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

After the final allocation amounts have been determined, the Settlement Agreement provides that Simpluris will send each SCCM two settlement checks consisting of the following: (a) one half of each SCCM's payment will be paid and reported as wages for tax purposes, subject to withholding, with the SCCM receiving an IRS Form W-2; and (b) the other half of each SCCM's payment will be treated as liquidated damages, exemplary damages, and interest and will be paid and reported on an IRS Form 1099. Settlement Agreement ¶ 37. Simpluris will withhold from each SCCM's payment, and disburse to the IRS or appropriate state agency, the employee's portion of payroll taxes and tax withholding attributable to wages. *Id.* Simpluris will also disburse the employer's portion of payroll taxes to the IRS or appropriate state agency. *Id.*

Within 31 days of the Settlement Effective Date, Defendant will deposit the Gross Settlement Amount less any reversion amount, into a Qualified Settlement Fund established by the Settlement Administrator, *Id.* ¶ 39. Within 31 days of Defendant depositing the funds, the Settlement Administrator shall process all settlement awards, prepare and distribute settlement award payment checks to SCCM, distribute the Court-approved attorneys' fees and costs to Plaintiffs' counsel, and distribute the Court-approved enhancement awards to Plaintiffs. *Id.* ¶ 40.

If more than $50,000 remains in the Class Fund after the deadline to cash settlement checks (90 days) has passed, the residual amount may be redistributed to SCCMs who cashed checks. If a residual amount remains after this second distribution, or if there is no second distribution, the residual funds will be donated entirely to the Legal Foundation of Washington. *Id.* ¶ 19(a).

### III.   ARGUMENT

**A.   Certification of Plaintiffs' Washington State Law Claims Under Rule 23 Is Appropriate for Settlement Purposes.**

For purposes of settlement, the parties request certification under Rule 23 of the Washington Class. Even in the context of settlement, courts must determine whether the proposed representatives fulfill the requirements of the rule. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); Fed. R. Civ. P. 23(e). For a class to be certified, it must meet four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy. Because Plaintiffs seek to certify the class under Rule

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 5

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

23(b)(3), it must also satisfy the requirements of superiority and predominance.

Plaintiffs satisfy the certification requirements for the proposed class, which is defined as "any individual who worked as a non-exempt traveler and received per diem for Defendant in Washington state at any time from February 18, 2019, until September 19, 2022." Accordingly, the Court should grant certification for purposes of settlement.

### 1. The Prerequisites of Rule 23(a) Are Satisfied.

#### a. The Proposed Class Meets the Numerosity Requirement

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is "not tied to any fixed numerical threshold." *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010). Courts generally find that classes of at least 40 members are sufficiently numerous to meet this requirement. *See, e.g.*, *Blough v. Shea Homes, Inc.*, 2014 WL 3694231, at *6 (W.D. Wash. July 23, 2014) (citing *Novella v. Westchester County,* 661 F.3d 128, 143 (2d Cir.2011) (reciting view of many district courts that classes of at least 40 satisfy numerosity). There are 555 WCMs. Thus, numerosity is satisfied.

#### b. The Proposed Class Shares Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To fulfill this requirement, all questions need not be common, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotations and alterations omitted). The thrust of the commonality requirement is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 350. Plaintiffs' "claims must depend upon a common contention . . . which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The Ninth Circuit has articulated this prong as requiring "a single *significant* question of law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (italics in original) (citation omitted).

Questions of law and fact are common to the WCMs and include whether IMIA failed to compensate traveler employees at the proper overtime pay rate as required by the FLSA and Washington law. *See* Dkt. No. 18 (Complaint); Dkt. No. 28 (Motion for Conditional Certification).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 6

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

### c. Plaintiffs' Claims Are Typical of the Proposed Class Claims

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The purpose of this requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The relevant inquiry is whether the representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The proposed class representatives worked as traveler employees during the relevant timeframe in Washington, and their claims are the same as other WCMs that Defendant failed to properly compensate for overtime work. Thus, typicality is satisfied.

### d. The Proposed Class Representatives Are Adequate

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. The proposed class representatives satisfy the adequacy requirement for settlement purposes because they seek the same legal relief—overtime pay compensation—as the proposed class, and there is no evidence of any conflict of interest.

Furthermore, Plaintiffs have retained counsel that are qualified, experienced, and able to conduct this litigation on behalf of the proposed class. *See* Rekhi Decl. ¶¶ 10-19; Declaration of Erika Nusser ("Nusser Decl.") ¶¶ 4-7. Plaintiffs' counsel have represented thousands of employees in class and collective wage and hour cases over the past 20 years. *See* Rekhi Decl. at ¶¶ 17-19; Nusser Decl. ¶ 6. For these reasons, the Court should appoint Rekhi & Wolk, P.S. and Terrell Marshall Law Group PLLC as class counsel pursuant to Rule 23(g).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 7

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

### 2. The Prerequisites of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action is a superior method of adjudication for the "fair and efficient adjudication of the controversy."

"The main concern in the predominance inquiry . . . is the balance between individual and common issues." *Troy v. Kehe Food Distrib., Inc.*, 276 F.R.D. 642, 656 (W.D. Wash. 2011). The reviewing court is assessing whether common issues "are more prevalent or important than [any] non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotations omitted). Here, all WCMs share a common set of factual and legal issues that predominate. IMIA has a common policy and practice as it relates to overtime compensation, including the exclusion of per diem pay when calculating the overtime pay rates.

Courts consider the following factors to determine superiority: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Plaintiffs' counsel is unaware of any WCMs who have expressed an interest in individually pursuing their claims against IMIA. Likewise, Plaintiffs' counsel is unaware of any other lawsuits, either brought individually or as a class, concerning traveler employee overtime claims against IMIA. The WCMs worked for IMIA in Washington, making this forum appropriate. Finally, class certification for settlement purposes automatically satisfies the manageability factor. *See Amchem Prods., Inc.*, 521 U.S. at 620 ("for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

### B. The Court Should Appoint Plaintiffs' Counsel as Class Counsel

Generally, a court that certifies a class must appoint class counsel. *See* Fed. R. Civ. P. 23(g)(1)(A). The rule lists the following factors for consideration: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class

Plaintiffs' Motion for Preliminary Approval
Case No.: 2:22-cv-00339-BJR - 8

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Id.* The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs request that Rekhi & Wolk, P.S. and Terrell Marshall Law Group PLLC be appointed as class counsel. As explained above, the two firms have diligently litigated this action thus far and, after substantial investigation and analysis, negotiated a fair and reasonable settlement with the assistance of mediator Teresa Wakeen. Class Counsel have substantial credentials in class and collective action litigation. *See* Rekhi Decl. ¶¶ 10-19; Nusser Decl. ¶¶ 4-7.

### C. The Court Should Grant Preliminary Approval of the Proposed Settlement

#### 1. Applicable Legal Standard

Rule 23(e) and the FLSA require judicial approval for the settlement of claims brought on a class and collective-action basis. 29 U.S.C. § 216(b); Fed. R. Civ. P. 23(e). Under Rule 23(e)(2), a court may only approve a settlement on finding that it is fair, reasonable, and adequate. *See Hanlon*, 150 F.3d at 1026. The following factors are considered in making this determination:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Hanson v. MGM Resorts Int'l*, 2018 WL 3630284, at *4 (W.D. Wash. July 31, 2018) (citing *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)); *see also* Fed. R. Civ. P. 23(e)(2) (outlining similar factors for approval of settlement).

In reviewing a proposed FLSA collective settlement, a court "must determine whether the settlement represents a 'fair and reasonable resolution of a bona fide dispute.'" *Grewe v. Cobalt Mortg., Inc.*, 2016 WL 4014114, at *1 (W.D. Wash. July 27, 2016) (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164 (S.D. Cal. 2016)). In doing so, the court applies the requirements of Rule 23(e) by analogy to the FLSA context. *Id.*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 9

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

## 2. A Bona Fide Dispute Exists Between the Parties

A bona fide dispute exists when the plaintiffs' claims raise legitimate questions about "the existence and extent of Defendant's FLSA liability." *Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014). A court may not grant approval of a compromise settlement if plaintiffs are "clearly entitled to the compensation they seek." *Selk,* 159 F. Supp. 3d at 1174. "If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Grewe*, 2016 WL 4014114, at *1 (internal citations omitted).

Here, the parties present a bona fide dispute related to the proper overtime rate of pay under federal and state law overtime requirements. IMIA maintains that it follows those laws. Plaintiffs claim that IMIA violates the laws. Both parties firmly believe in the merits of their respective claims and defenses, but the parties also agree that a compromise is appropriate given the time and expenses associated with continued litigation, along with the uncertainty of dispositive motion practice, trial, and appeal. Thus, this factor weighs in favor of settlement approval.

### D. The Proposed Settlement is Fair, Reasonable, and Adequate as Required by Fed. R. Civ. P. 23(e) and the FLSA

#### 1. The Proposed Settlement Adequately Evaluates the Strength of the Case, the Risk of Further Litigation, and the Risk of Maintaining Class Action Status

When evaluating the strengths and risks in further litigation, the court gives the "recommendations of plaintiffs' counsel . . . a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Moreover, continuing to litigate these claims through trial and appeals would be complex and expensive. *See Rinky Dink, Inc. v. World Bus. Lenders, LLC*, 2016 WL 4052588, at *5 (W.D. Wash. Feb. 3, 2016). The parties thus desire to resolve this case by way of a negotiated settlement payment by IMIA in exchange for a final judgment and release. *See Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982) ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 10

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

waiver of statutory rights brought about by an employer's overreaching.").

### 2. The Proposed Settlement Was Negotiated After Arm's-Length Negotiations

The parties participated in a full-day mediation before a neutral third party and continued negotiating for nearly two months before executing a term sheet. Moreover, no evidence suggests that collusion or bad faith exists to undermine the propriety of this settlement. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (noting that the Ninth Circuit "put[s] a good deal of stock into the product of an arms-length, non-collusive, negotiated resolution").

### 3. The Proposed Settlement Fairly and Adequately Compensates the SCCMs

In assessing the amount offered in settlement, a court typically weighs the relief obtained in the settlement against plaintiffs' expected recovery. *See, e.g.*, *Ikuseghan v. Multicare Health Sys.*, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) (comparing value of settlement to possible recovery at trial); *see also Harris v. Vector Mkt'g Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (courts consider plaintiffs' expected recovery balanced against value of settlement offer).

Plaintiffs' counsel have calculated the full recovery of actual damages on behalf of WCMs and FCMs to be approximately $5.3 Million. Rekhi Decl. ¶ 8. There were many disputes that could have substantially reduced this amount, including the statute of limitations and tolling thereof, the proper overtime rate, and the hours worked, among others. And, of course, if the Court were to find there is no liability, the recovery would be $0. Given the bona fide nature of the dispute and the risks inherent in litigation and trial, the $2,500,000 Gross Settlement Amount provides a significant recovery for SCCMs, with an individual average recovery of approximately $1,500, *after* the deduction of attorneys' fees and out-of-pocket litigation costs, settlement administration costs, and service payments. This supports preliminary approval. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding recovery of 1/6 of potential damages to be fair).

### 4. Sufficient Discovery Was Undertaken Before Reaching the Proposed Settlement

Next, courts look to "whether the parties had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink Inc.*, 2015 WL

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 11

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

11234156, at *5. Completion of discovery is not necessary for approval of a class action settlement "as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). Here, the parties exchanged written discovery requests and responses. IMIA produced thousands of documents, including company policies, job descriptions, performance evaluations, and other documents related to Plaintiffs' job duties; payroll data, showing Travlers' weekly earnings and time-off from work; and timekeeping data for the post-reclassification period. The parties exchanged detailed and thorough mediation memoranda with factual support and legal authority supporting their relative positions. This information combined is more than sufficient for the parties to have a clear view of the strengths and weaknesses of their liability and damages arguments.

### 5. The Parties' Counsel Proposing Settlement Are Experienced in Class and Collective Litigation

Counsel for the parties are experienced wage and hour attorneys. *See* Section III.B., *supra*; *see also* www.DWT.com (Defendant's Counsel's website). Counsel for both sides have conducted a thorough investigation of the facts and law of the case and have advised their respective clients regarding the settlement. *See Wilson v. Venture Fin. Grp., Inc.*, 2011 WL 219692, at *2 (W.D. Wash. Jan. 24, 2011) (preliminarily approving settlement where the proponents of the settlement were experienced in the same type of litigation). Plaintiffs' counsel believe the settlement is fair, reasonable, adequate, and in the best interests of the proposed class. Rekhi Decl. ¶ 20; Nusser Decl. ¶ 8.

### 6. SCCMs Will Have an Opportunity to Object to or Opt Out of the Settlement

If the Court preliminarily approves the proposed settlement, each SCCM, as explained in the proposed Notices, will be given the opportunity to accept, to accept and object, or to reject/opt out of the settlement. Therefore, this opportunity weighs in favor of preliminary approval. *See Wilson v. Venture Fin. Grp., Inc.*, 2011 WL 219692, at *2 (W.D. Wash. Jan. 24, 2011) (finding settlement to be fair, in part, because each class member had opportunity to opt out).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 12

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

### 7. Neither the SCCMs nor the Class Representatives Will Receive Preferential Treatment

Under this factor, the Court determines whether the settlement provides preferential treatment to any class member. *Harris v. Vector Mkt'g Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011). The Ninth Circuit has recognized that service awards to named plaintiffs are permissible and do not render a settlement unfair or unreasonable. *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). However, the Court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members such that it creates a conflict of interest." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328 (C.D. Cal. 2016) (internal quotations omitted). To do so, the Court looks at the proportion of the payments with respect to the settlement amount, along with the actions that the named plaintiffs have taken to protect the class, the degree to which the class benefitted from those actions, and the amount of time and effort the named plaintiffs expended in pursuing the litigation. *Id.* (internal quotations omitted).

Plaintiffs request preliminary approval of a service award of $10,000 to each named Plaintiff. These employees commenced the lawsuit, worked with Plaintiffs' counsel to litigate the claims, and responded to discovery. Rekhi Decl. ¶ 21. Plaintiffs responded to extensive interrogatories, requests for production, and requests for admissions. *Id*. They were instrumental in providing information related to the wage claims and access to witnesses. *Id*. They also made themselves available and actively participated in settlement and mediation discussions. *Id*. They did this despite working long hours as welders. *Id*. Similar service awards have been approved in our jurisdiction. *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 3087073, at *4 (W.D. Wash. May 31, 2016) (finding incentive award of $10,000 is reasonable.); *Morris v. FPI Mgmt., Inc.*, No. 2:19-CV-0128-TOR, 2022 WL 3013076, at *7 (E.D. Wash. Feb. 3, 2022) (approving payment of service awards in the amount of $10,000 each) *Helde v. Knight Transportation, Inc.*, No. 2:12-CV-00904-RSL, 2017 WL 4701323, at *2 (W.D. Wash. Oct. 19, 2017)(Same); *Hallman v. Wells Fargo Bank, N.A.*, No. 2:18-CV-01190 JLR, 2021 WL 9567170, at *1 (W.D. Wash. Mar. 2, 2021)(Finding $10,000 service award reasonable where the total class fund was $2,000,000).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 13

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

### 8. Plaintiffs' Counsel's Proposed Fee Request Is Not Excessive

Plaintiffs' counsel fees and costs will be $698,000 of the total $2,500,000 Gross Settlement amount. This amounts to under 28% of the fund. The Ninth Circuit has recognized that the percentage-of-the-fund method is the appropriate method for calculating fees when counsel's effort has created a common fund. *See, e.g., In re Bluetooth*, 654 F.3d at 942. The Ninth Circuit benchmark is 25%, with common fund fees typically ranging from 20% to 30% of the fund. *In re Coord. Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (citation omitted). *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *see also Gutierrez-Rodriguez v. R.M. Galicia, Inc.,* Case No.: 16-CV-00182-H-BLM, 2018 WL 1470198 (March 26, 2018) (approving award of fees and costs of 30%, based on excellent results achieved, risks of litigation, high quality of work and contingency basis).

Class Counsel's lodestar may also be considered in evaluating the reasonableness of a percentage award. *Vizcaino*, 290 F.3d at 1050-51. Class Counsel's current lodestar is approximately $180,000. Rekhi Decl. ¶ 4. Class counsel anticipate the total lodestar to exceed $200,000 through the final approval process. Plaintiffs' counsel requests that the Court defer ruling on this issue until Plaintiffs' counsel files a full fee petition at the time of final approval.

### E.   The Court Should Approve the Parties' Rule 23 Notices.

The content of the proposed Rule 23 Notices fully complies with due process and Rule 23(e)(1). Settlement Agreement, Exs. A-B. Each Notice describes the nature of the action, the class certified, the claims and defenses, the terms of the settlement, provides a detailed explanation of how class members can participate, exclude themselves from, or object to the settlement, informs the class members about allocation of attorneys' fees, provides specific information regarding the date, time, and place of the final approval hearing, and explains the binding effect of a class judgment. Accordingly, the detailed information in the proposed Notices is more than adequate to put SCCMs on notice of the proposed settlement.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 14

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

## IV. CONCLUSION

This settlement resulted from an arm's-length negotiation between counsel, which resolves a *bona fide* dispute over alleged unpaid overtime wages. The settlement is fair, reasonable, and adequate pursuant to Rule 23 and the FLSA. Accordingly, the Plaintiffs respectfully request that this Court preliminarily approve the parties' settlement agreement and enter the parties' proposed Order providing for: (1) preliminary approval of the settlement; (2) certification of the proposed Washington Class for purposes of settlement; (3) appointment of appoint Rekhi & Wolk, P.S. and Terrell Marshall Law Group PLLC as Class Counsel; (4) approval of the form and distribution method of the proposed Notices of Settlement; and (5) scheduling of a final approval hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the WCMs and FCMs. Pursuant to this Court's Standing Order for All Civil Cases (Dkt. No. 13), counsel for Plaintiffs certifies that the Parties conferred prior to filing this motion. Rekhi Decl. ¶ 22.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 15

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

RESPECTFULLY SUBMITTED AND DATED this 7th day of February, 2023.

           REKHI & WOLK, P.S.

By: *s/ Hardeep S. Rekhi*
    Hardeep S. Rekhi, WSBA #34579
    Email: hardeep@rekhiwolk.com
    Gregory A. Wolk, WSBA #28946
    Email: greg@rekhiwolk.com
    529 Warren Avenue North, Suite 201
    Seattle, Washington 98109
    Telephone: (206) 388-5887
    Facsimile: (206) 577-3924

    Toby J. Marshall, WSBA #32726
    Email: tmarshall@terrellmarshall.com
    Erika L. Nusser, WSBA #40854
    Email: enusser@terrellmarshall.com
    TERRELL MARSHALL LAW GROUP PLLC
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

*Attorneys for Plaintiff*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 16

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

# CERTIFICATE OF SERVICE

I hereby certify that I caused the document to which this certificate is attached to be delivered to the following as indicated:

*Attorneys for Defendant International Marine and Industrial Applicators, LLC*

Melissa Mordy, WSBA #41879
Kate Tylee Herz, WSBA #40640
DAVIS WRIGHT TREMAINE LLP
929 180th Avenue, Suite 1500
Bellevue, WA 98004-4786
Telephone: 425.646.6100
Fax: 425.646.6199
Email: missymordy@dwt.com
       katetyleeherz@dwt.com

Katie Loberstein, WSBA #51091
Scott Prange, WSBA #53980
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: 206.622.3150
Fax: 206.757.7700
Email: katieloberstein@dwt.com
       scottprange@dwt.com

☐ Messenger
☐ U.S. Mail, postage prepaid
☐ Federal Express
☐ Facsimile
☐ Email
☒ ECF

Declared under penalty of perjury under the laws of the state of Washington dated at Seattle, Washington this 7th day of February, 2023.

*/s/ Jeff Mead*
Jeff Mead, Paralegal

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 17

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924