The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALPHONSA CHANDLER; NICHOLAS GORE; BRENT MERITY; and ERIC VAUGHAN, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL MARINE AND INDUSTRIAL APPLICATORS, LLC, a Florida Corporation,<br><br>Defendant. | No. 2:22-cv-00339-BJR<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL**<br><br>HEARING DATE: June 5, 2023 |

PLAINTIFFS' MOTION FOR FINAL APPROVAL - i
CASE NO.: 2:22-cv-00339-BJR

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

## I. INTRODUCTION

Plaintiffs Alphonsa Chandler, Nicholas Gore, Brent Merity, and Eric Vaughn ("Plaintiffs") hereby move for final approval of a Class and Collective Action Settlement Agreement entered into by Plaintiffs and Defendant International Marine and Industrial Applicators (IMIA) ("Settlement Agreement" or "Settlement," ECF Doc. No. 42-1). The Settlement seeks to resolve claims of (1) unpaid overtime claims under the Fair Labor Standards Act (FLSA) and (2) unpaid overtime and related wage and hour claims under Washington state law. On March 20, 2023, this Court preliminarily approved the Settlement finding the relief afforded the proposed collective and class action members and the Settlement Administration expenses award—as being fair, reasonable and adequate. ECF Doc. No. 48 at 2.

Pursuant to the terms of the Settlement and the Order Granting Preliminary Approval, and as set forth below, the Settlement Administrator, Simpluris, sent notice to the Settlement Class to provide them with an opportunity to request exclusion and/or be heard on their objections at the final approval hearing. As of May 31, 2023, Simpluris had received no objections or exclusions.

As set forth below, the Settlement is a fair, adequate, and reasonable resolution of the parties' *bona fide* dispute as to liability and damages under FLSA and Washington law. Accordingly, Plaintiffs respectfully request this Court issue an Order granting final approval of the Settlement.

## II. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On February 18, 2022, Plaintiffs filed a class action complaint in King County, Washington. The case was removed to this Court and the complaint subsequently amended to include a FLSA collective action. Dkt. No. 1. Plaintiffs allege that Defendant failed to properly pay Plaintiffs and other similarly situated employees for all hours worked and all required overtime wages under the Washington Minimum Wage Act, RCW 49.46 *et seq.*, the Washington Wage Rebate Act, RCW 49.52 *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. Dkt. No. 18.

The parties exchanged written discovery requests and responses. ECF Doc. No. 42 ¶ 2. Defendant produced hundreds of pages of documents, including company policies, job descriptions,

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 1

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

performance evaluations; payroll data; per diem payments; and timekeeping data for work done between February 18, 2019, and September 19, 2022 (the "Class Period"). *Id*.

On July 1, 2022, Plaintiffs moved to conditionally certify a nationwide FLSA collective action. Dkt. No. 28. While the motion was pending, the parties successfully mediated the case and entered into the Settlement Agreement on January 18, 2023. ECF Doc. No. 42-1.

On February 7, 2023, Plaintiffs moved for preliminary approval of the Settlement. ECF Doc. No. 41. The Court granted preliminary approval on March 20, 2023. ECF No. 48. The Court's Order certified the Rule 23 Washington Class and the Collection Action for settlement purposes, appointed Rekhi & Wolk and Terrell Marshall as Class Counsel, and Simpluris as the Settlement Administrator to disseminate and process Notices and perform the functions required by the terms of the Settlement, and approved the form, content and distribution method of the parties' FLSA Notice, Rule 23 Notice, and Opt-in Form. *Id.* The Court set the Final Fairness Hearing for June 5, 2023 when it will decide whether to finally approve the Settlement and the awards as contemplated therein. *Id*.

**B.    Notice Distribution, Response of Settlement Members, and Opt-In Process.**

On April 4, 2023, Simpluris timely disseminated the Court-approved notices to Settlement Class and Collective Members. Declaration of Mary Butler ("Butler Decl.") ¶ 6. Out of the 1,157 Notices sent, a total of 36, or 3%, were undeliverable because Simpluris could not obtain a better mailing address through skip traces. *Id*. ¶ 9. However, as of May 26, 2023, Class Counsel attempted to call, text, and/or email all FLSA Collective Members who had not yet opted in to remind them of the June 3, 2023 deadline to opt in. Declaration of Hardeep Rekhi in support of Plaintiffs' Motion for Final Approval ("Rekhi Decl.") ¶ 2. As of May 31, 2023, no one objected to or requested exclusion from the Settlement. Butler Decl. ¶¶ 11-12. Also as of May 31, 2023, Simpluris received 302 valid opt-in claim forms. *Id*. ¶ 13.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 2

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

**C.     Settlement Beneficiaries and Proposed Allocation of Settlement Funds.**

The Settlement resolves the claims brought under both federal and Washington state law with two separate settlement groups as defined below:

> "Washington Class Member" or "WCM" shall include any individual who worked as a non-exempt traveler and received per diem for Defendant in Washington state at any time from February 18, 2019, until September 19, 2022. The total number of putative WCMs is currently estimated to be 555.

> "FLSA Collective Member" or "FCM" shall include any individual who worked as a nonexempt traveler and received per diem for Defendant at any time from February 18, 2019 until September 19, 2022. The total number of putative FMCs is currently estimated to be 1,157.

The Court certified these two groups for settlement purposes only when preliminarily approving the Settlement. *See* ECF No. 48 at 2.

The Settlement resolves the claims for a gross settlement amount of $2,500,000, with proposed payments allocated as follows:

- $750,000 ("Class Fund") will be allocated to resolve claims for work performed during the class period in this lawsuit with all WCMs who do not opt out of the Washington Class.

- Up to $1,000,000 will be allocated to resolve claims in this lawsuit with all FCMs who submit valid Claim Forms ("FLSA Claims Made Fund") for work performed during the period of February 18, 2019, until September 19, 2022 <u>and</u> that is within the 3 year statute of limitations (that is 3 years prior to the date of the opt-in form).

- $750,000 will be allocated to Plaintiffs' counsel's attorneys' fees and costs as well as enhancements for Plaintiffs (the "Attorney Fee and Enhancements Fund"). *Id*. ¶ 19(c). This is inclusive of, if approved, a $10,000 enhancement award for each Plaintiff.

ECF Doc. No. 42-1 ¶¶ 19, 23. Class Counsel are contemporaneously filing a fee petition for approval of the requested Attorney Fee and Enhancements Fund. Any unapproved amounts from such fund will be reallocated on a *pro rata* basis to the Class and the FLSA Claims Funds. *Id*. ¶ 24.

Total estimated damages of all FCMs and WCMs is approximately $5.3 million based on individual payroll data and timekeeping data obtained from Defendant. *Id*. ¶ 8. The $2,500,000 Gross

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 3

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

Settlement Amount results in an average recovery of approximately $1,512 *after* deducting the proposed Attorney Fee and Enhancements Fund. *Id*.

Those FCMs who timely complete the Release of Claims Form and those WCMs who do not timely opt out of the settlement ("Settlement Class/Collective Members" or "SCCM") will have settlement proceeds distributed to them on a *pro rata* basis, as explained above. No part of the Settlement shall revert to Defendant other than those portions allocated to FCMs who do not opt-in and participate in the settlement. ECF Doc. No. 42-1 ¶¶ 19(a-b), 20.

After the final allocation amounts have been determined, the Settlement Agreement provides that Simpluris will send each SCCM two settlement checks consisting of the following: (a) one half of each SCCM's payment will be paid and reported as wages for tax purposes, subject to withholding, with the SCCM receiving an IRS Form W-2; and (b) the other half of each SCCM's payment will be treated as liquidated damages, exemplary damages, and interest and will be paid and reported on an IRS Form 1099. *Id.* ¶ 37. Simpluris will withhold from each SCCM's payment, and disburse to the IRS or appropriate state agency, the employee's portion of payroll taxes and tax withholding attributable to wages. *Id*. Simpluris will also disburse the employer's portion of payroll taxes to the IRS or appropriate state agency. *Id*.

Within 31 days of the Settlement Effective Date, Defendant will deposit the Gross Settlement Amount less any reversion amount, into a Qualified Settlement Fund established by the Settlement Administrator, *Id*. ¶ 39. Within 31 days of Defendant depositing the funds, the Settlement Administrator shall process all settlement awards, prepare and distribute settlement award payment checks to SCCM, distribute the Court-approved attorneys' fees and costs to Plaintiffs' counsel, and distribute the Court-approved enhancement awards to Plaintiffs. *Id*. ¶ 40.

If more than $50,000 remains in the Class Fund after the deadline to cash settlement checks (90 days) has passed, the residual amount may be redistributed to SCCMs who cashed checks. If a residual amount remains after this second distribution, or if there is no second distribution, the residual funds will be donated entirely to the Legal Foundation of Washington. *Id*. ¶ 19(a).

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 4

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

### III. ARGUMENT

#### A. The Court Should Grant Final Approval of the Settlement.

This Court preliminarily approved the proposed Settlement as fair, adequate, and reasonable. ECF Doc. No. 48. Since preliminary approval, Simpluris distributed notice, with 312 SCCMs submitting opt-ins and no one objecting or requesting exclusion as of May 31, 2023. The Settlement will distribute excellent payments that represent good value for Settlement Class members' claims, particularly when compared with the uncertainty and risk of continued litigation. The Court should approve the settlement so that Settlement Class members may receive their settlement payments.

As discussed in Plaintiffs' motion for preliminary approval, Ninth Circuit courts evaluate whether a Rule 23 class settlement is fair, reasonable, and adequate by looking to the following factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also* Fed. R. Civ. P. 23(e)(2) ("If the [settlement] proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate."). Settlements procured prior to class certification "create[] a greater potential for a breach of a fiduciary duty owed to the class . . . [and] must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest . . . before securing the court's approval as fair." *Rodriguez v. Danell Custom Harvesting, LLC*, 327 F.R.D. 375, 383 (E.D. Cal. 2018) (quoting *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (internal quotations omitted)). As explained below, each of the factors supports final approval of the Settlement.

Settlements of FLSA collective action claims also require court approval. *Rodriguez v. Danell Custom Harvesting, LLC*, 327 F.R.D. 375, 384 (E.D. Cal. 2018). To approve the settlement of an FLSA claim, the court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute." *Id.* at 386 (quoting *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324,

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 5

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

1333 (N.D. Cal. 2014)). In doing so, the Court applies the requirements of Rule 23(e) by analogy to the FLSA context. *Id.*

### 1. The Settlement Adequately Evaluates the Strength of the Case, the Risk of Further Litigation, and the Risk of Maintaining Class and Collective Action Status

When evaluating the strengths and risks in further litigation, the court gives the "recommendations of plaintiffs' counsel . . . a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Moreover, continuing to litigate these claims through trial and appeals would be complex and expensive. *See Rinky Dink, Inc. v. World Bus. Lenders, LLC*, 2016 WL 4052588, at *5 (W.D. Wash. Feb. 3, 2016). The parties believe in the merits of their claims and defenses but given the uncertainty of subsequent motion practice and trial and the expenses associated with continuing discovery and preparing for trial, they believe that this settlement is appropriate. The parties thus desire to resolve this case by way of a negotiated settlement payment by Defendant in exchange for a final judgment and release. *See Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982) ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching."). This factor weighs in favor of settlement approval.

### 2. The Settlement Fairly and Adequately Compensates the Settlement Members.

In assessing the amount offered in settlement, the Court typically weighs the relief obtained in the settlement against plaintiffs' expected recovery. *See, e.g.*, *Ikuseghan v. Multicare Health Sys.*, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) (comparing value of settlement to possible recovery at trial); *see also Harris v. Vector Mkt'g Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011) (courts consider the expected recovery balanced against the value of the settlement offer).

Here, Class Counsel calculated the full potential recovery to be approximately $5,300,000, which assumes that the Court would have resolved all *bona fide* disputes in Plaintiffs' favor. There were many disputes that could have substantially reduced Class and Collective members' potential recovery, including the statute of limitations and tolling thereof, the proper overtime rate, and the

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 6

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

hours worked, among others. Moreover, Collective Members would have had to opt-in and participate in the case. If the Court found that there was no liability, which was also a *bona fide* dispute between the parties, the recovery would be zero. Given the bona fide nature of the dispute and the risks inherent in litigation and trial, the $2,500,000 Gross Settlement Amount provides a significant recovery for SCCMs, with an individual average recovery of approximately $1,500, *after* the deduction of attorneys' fees and out-of-pocket litigation costs, settlement administration costs, and service payments. Moreover, no one objected to or requested exclusion from the settlement, and 302 Opt-in Plaintiffs returned a release, which confirms that the settlement amount is fair and adequate. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (noting that the lack of objections favored final approval of settlement). Considering the risks of continued litigation, this recovery represents a sufficient amount to support final approval. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of 1/6 of the potential recovery to be fair under the circumstances).

### 3. Sufficient Discovery Was Undertaken Before Reaching the Proposed Settlement.

Next, courts look to "whether the parties had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink Inc.*, 2015 WL 11234156, at *5; *see also Walsh v. CorePower Yoga LLC*, 2017 WL 4390168, at *7 (N.D. Cal. Oct. 3, 2017). Completion of discovery is not necessary for approval of a class action settlement, "as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). Here, the parties exchanged written discovery requests and responses. IMIA produced thousands of documents, including company policies, job descriptions, performance evaluations, and other documents related to Class and Collective Members' job duties; payroll data, showing weekly earnings and time-off from work; and timekeeping data for the post-reclassification period. The parties exchanged detailed and thorough mediation memoranda with factual support and legal authority supporting their relative positions. This information combined is more than sufficient for the parties to have a clear view of the strengths and weaknesses of their liability and damages arguments.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 7

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

### 4. The Parties' Counsel Proposing Settlement Are Experienced in Class and Collective Litigation.

Courts accord "great weight" to the views of counsel because they are the ones most closely acquainted with the facts of the litigation. *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Absent fraud or collusion, then, courts "should rely upon the judgment of experienced counsel for the parties" when considering the adequacy of a proposed settlement. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013); *see also Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery.") (internal quotations omitted)).

Counsel for the parties are experienced wage and hour attorneys. *See* ECF Doc. No. 42 ¶¶ 10-20 and Doc. No. 43; *see also* www.DWT.com (Defendant's counsel's website). Counsel for both sides have conducted a thorough investigation of the facts and law of the case and have advised their respective clients regarding the settlement. *See Wilson v. Venture Fin. Grp., Inc.*, 2011 WL 219692, at *2 (W.D. Wash. Jan. 24, 2011) (preliminarily approving settlement where the proponents of the settlement were experienced in the same type of litigation). Class Counsel believes the settlement is fair, reasonable, and adequate, and in the best interests of the proposed class.

### 5. Presence of a Governmental Participant.

The Class Action Fairness Act ("CAFA") requires that each defendant participating in a proposed settlement of a class action provides notice to appropriate state and federal officials. *See* 28 U.S.C. § 1715(b). Here, Simpluris, on behalf of Defendant, timely provided CAFA notice to the Attorney General of the United States and to the Attorney Generals of all states and territories where class members reside. Butler Decl. ¶ 14. No government official has raised concerns about this settlement, and therefore, this factor weighs in favor of approving the proposed settlement. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 608 (N.D. Cal. 2015) (finding that because no officials had responded to the CAFA notice, that the presence of a government participant factor favored settlement).

### 6. Settlement Class Members Have Responded Positively to the Proposed Settlement

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 8

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

Few objections to a proposed settlement raise a "strong presumption" that a settlement is favorable. *Millan v. Cascade Water Servs., Inc.*, 2016 WL 3077710, at *8 (E.D. Cal. May 31, 2016). Here, the reaction of the Settlement Class Members strongly supports approval. Of the 1,157 Settlement Class Members, no one has objected to or requested exclusion from the settlement as of May 31, 2023. Butler Decl. ¶¶ 5, 11-12. Simpluris received signed Consent to Join Forms from 312 Settlement Class Members. *Id.* ¶ 13. This participation rate and lack of objections or requests for exclusion weigh heavily in favor of final approval.

### 7. *No Evidence of Collusion*

In considering approval of a class action settlement prior to class certification, the court must consider whether there is evidence of collusion or other conflicts of interest. *Rodriguez v. Danell Custom Harvesting, LLC*, 327 F.R.D. 375, 389 (E.D. Cal. 2018) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). The Ninth Circuit has identified three signs of collusion: "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . . .; and (3) when the parties arrange for fees not awarded to revert defendants than be added to the class fund." *Id.* (quoting *In re Bluetooth*, 654 F.3d at 947). None of these factors weigh toward denying the proposed settlement.

First, the Settlement Class Members are receiving a substantial award while Class Counsel are seeking less than 28% of the common fund. *See Rodriguez*, 327 F.R.D. at 389 (finding that an award of more than one million dollars being distributed to the class while class counsel only sought 25% of the common fund did not present signs of collusion). Settlement Class Members were apprised of the requested attorney fee award with no members objecting. Butler Decl. ¶12, Exs. A-B. Plaintiffs' contemporaneously filed fee petition further justifies this award as reasonable.

Second, the fact that the parties agreed to a "clear sailing" provision where Defendant would not object to Class Counsel's separate request for attorneys' fees does not warrant denying final approval. *See id.* (approving settlement despite "clear sailing" provision in settlement agreement

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 9

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

because the requested attorneys' fees come from the settlement fund and are reasonable); *Deaver v. Compass Bank*, 2015 WL 8526982, at *9 (N.D. Cal. Dec. 11, 2015) (approving settlement despite presence of a "clear sailing" provision). Rather, Class Counsel's fee request still requires Court approval and any amount not approved by the Court will go back to the Settlement Fund to be distributed to Class Members.

Third, any reversion to Defendant would apply only to the *pro rata* awards for those FCMs who did not timely submit Consent to Join Forms. ECF Doc. No. 42-1 ¶ 19(b). But Defendant also will not receive a release as to those individuals' claims. *Id.* ¶¶ 41, 44.

Additionally, the Western District of Washington recognizes that "arm's-length negotiations by competent counsel are prima facie evidence of fair settlement." *Ikuseghan v. Multicare Health Sys.*, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016). As detailed in Plaintiffs' motion for preliminary approval of settlement (ECF Doc. No. 45) and in III.A.4, *supra*, the Settlement represents an arms-length negotiation between skilled counsel who are familiar with wage and hour class action litigation. Therefore, this factor weighs in favor of approving the proposed settlement.

**B. Additional Factors Considered Pursuant to the Recently Amended Rule 23**

The 2018 Amendments to Federal Rule of Civil Procedure 23(e) enumerates factors for courts to evaluate whether a settlement is fair, reasonable, and adequate. The Committee Notes to this Amendment emphasizes that these factors do not displace other factors developed by circuit courts, but instead, the Amendments seek "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) (Committee Notes on Rules—2018 Amendments). This section addresses additional factors under Rule 23(e) that have not already been addressed.

   1. *The Proposed Method of Distributing Relief Is Effective.*

The Court approved the parties' proposed forms of Notice and their proposal to use Simpluris as the Settlement Administrator. ECF Doc. No. 48. The Notices explained the process for submitting requests for exclusions or objections to the Settlement and for opting-in for Collective Members. Butler Decl., Exs. A-B. At no point did Simpluris receive requests for exclusion or rejections. Butler

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 10

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

Decl. ¶¶ 10-11. Upon final approval by the Court, the Settlement Administrator will be responsible for distributing the Gross Settlement Amount and administering required tax withholdings. ECF No. 42-1 ¶ 37. The Settlement Administrator shall distribute settlement award payment checks to Settlement Class and Collective members. *Id*. Thus, this factor weighs in support of final approval.

### 2. The Terms of the Proposed Attorney's Fees Aware Are Fair

If the class action settlement includes an award of attorneys' fees, then the Court must evaluate the fee award in the overall context of the settlement. *Ontiveros v. Zamora*, 2014 WL 3057506, at *15–16 (E.D. Cal. July 7, 2014) (internal quotations omitted). The Court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The Ninth Circuit has established a benchmark award of twenty-five percent, with common fund fees typically ranging from 20% to 30% of the fund. *In re Coord. Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (citation omitted); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *see also Gutierrez-Rodriguez v. R.M. Galicia, Inc.,* Case No.: 16-CV-00182-H-BLM, 2018 WL 1470198 (March 26, 2018) (approving award of fees and costs of 30%, based on excellent results achieved, risks of litigation, high quality of work and contingency basis); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (awarding fee of 30% of the fund); *Estate of Brown v. Consumer Law Assocs., LLC*, No. 11-cv-0194-TOR, 2013 WL 2285368, at *4 (E.D. Wash. May 23, 2013) (awarding fee of 30% of the fund). Courts in this state can and do award fees even greater than 30% of a common fund. *See A.M. v. Moda Health Plan, Inc.*, C 14-1191 TSZ, 2015 WL 9839771, at *3 (W.D. Wash. Nov. 3, 2015) (awarding fee of 35% of settlement fund); *Dennings v. Clearwire Corp.*, No. C10-1859JLR, 2013 WL 1858797, at *8 (W.D. Wash. May 3, 2013) (awarding fee of 35.78% of the fund).

Here, Class Counsel requests an attorneys' fee award of $696,921, which is 27.8% of the Settlement Fund, and an award of costs in excess of $14,000. *See* Rekhi Decl. ¶ 3. The common fund doctrine is an equitable exception to the American rule that litigants must bear their own

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 11

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

attorneys' fees. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). It is well settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* The "common fund" doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* A court with jurisdiction over the fund can "prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.*; *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it"). As a matter of public policy, awarding fees from the common fund promotes "greater access to the judicial system" by making it easier for class action plaintiffs to obtain counsel. *Bowles v. Washington Dep't of Ret. Sys.*, 121 Wn.2d 52, 72, 847 P.2d 440 (1993).

  Where, as here, counsel in a class or collective action seek fees from the common fund, courts have discretion to employ either the lodestar method or percentage-of-recovery method to calculate a reasonable fee. *Id*. When determining the appropriate fee from a common fund, the percentage-of-the-fund method is preferred. *Id.* The percentage method aligns lawyers' interest with the interest of class members, since it encourages lawyers to concentrate their efforts on achieving the highest possible recovery for the class, which in turn increases the fee award. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (recognizing that the percentage method "is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure'" (citation omitted)); *see also* William B. Rubenstein, *Why the Percentage Method?*, 2 Class Action Attorney Fee Digest 93 (March 2008) ("[U]nder the percentage method, counsel has an interest in generating as large a recovery for the class as possible, as her fee increases with the class's take, while keeping her hours

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 12

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

to the minimum necessary to do the job effectively.");[1] Task Force on Contingent Fees, Tort Trial and Insurance Practice Section of the American Bar Association, *Report on Contingent Fees in Class Action Litigation*, 25 Rev. Litig. 459, 469 (2006) (noting that the percentage method "has numerous advantages over the lodestar method," including its simplicity, the disincentive for attorneys to "bill unnecessary hours or to use three lawyers when one would do," and the fact that it "ties the lawyers' fee directly to the success of the litigation").

The lodestar method, by contrast, is typically used in cases involving a fee-shifting statute or when the class's recovery is difficult to determine. *See Bowles*, 121 Wn.2d at 72 ("While the lodestar method is generally preferred when calculating *statutory* attorney fees, the percentage of recovery approach is used in calculating fees under the common fund doctrine. The primary explanation for this distinction is that *statutory* attorney fees are separately assessed against the defendant while common fund attorney fees are taken directly from the recovery obtained by the plaintiffs." (citations omitted)); *In re Bluetooth*, 654 F.3d at 941 (courts use the lodestar method when the relief is "primarily injunctive in nature and thus not easily monetized"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (noting that courts use the lodestar method when "there is no way to gauge the net value of the settlement or any percentage thereof"). The lodestar method has been criticized as encouraging lawyers to prolong litigation and discourage early settlements that would benefit the class. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) ("[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement"); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (noting that the lodestar method "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits" (alterations in original) (citation omitted)).

---

[1] Available at https://billrubenstein.com/wp-content/uploads/2019/08/Rubenstein-_Mar08_column.pdf.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 13

Rekhi & Wolk, P.S.
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

Here, Class Counsel has agreed to limit their fee to less than 28% of the Gross Settlement Amount, which is in the typical benchmark range and warranted given a lodestar crosscheck. *See* ECF Doc. Nos. 45, 46, and 47. Class Counsel negotiated an early settlement despite contested issues, including whether Defendant's practices even constitute wage violations. Defendant argued that it rightfully excluded per diem from the overtime rate. They argued their payment practice was compliant with the FLSA, was consistent with DOL regulations and supported by the case law. 29 U.S.C. § 207(e)(2); 29 C.F.R. § 778.217(b)(3); *see Sharp v. CGG Land (U.S.) Inc.*, 840 F.3d 1211 (10th Cir. 2016) (affirming summary judgment for the employer and explaining that $35 per diem for travel-related expenses were appropriately exempted from employees' regular rate of pay). Plaintiffs argue to the contrary. Plaintiffs argue the FLSA and Washington Law require per diem payments must be included in the regular rate. *Clarke v. AMN Servs., LLC*, 987 F.3d 848, 854 (9th Cir.), *cert. denied*, 142 S. Ct. 710, 211 L. Ed. 2d 400 (2021).

Class Counsel were able to negotiate a favorable settlement to these contested issues without the need for costly litigation, and returning a significant portion of unpaid wages, which is an excellent outcome for Class and Collective Members. Class Counsel litigated this case on a strictly contingency basis and took on risk that it would not be paid for any of their efforts. Class Counsel also spent considerable time and effort in prosecuting the Class and Collective claims, accruing approximately $218,000 in fees.[2] Rekhi Decl. ¶ 4.

### 3. *The Proposal Treats Class and Collective Members Equitably Relative To Each Other*

Under this factor, the Court determines whether the settlement provides preferential treatment to any class or collective member. *Harris v. Vector Mkt'g Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011). The Ninth Circuit has recognized that service awards to named plaintiffs are permissible and do not render a settlement unfair or unreasonable. *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). However, the court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members such that

---

[2] Class Counsel submit their updated lodestars with this motion inclusive of work that has been done since they filed their brief in support of their request for approval of a fees and costs award. *See* Rekhi Decl. ¶¶ 3-8; Declaration of Erika Nusser in support of Plaintiffs' Motion for Final Approval ¶ 7.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 14

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

it creates a conflict of interest." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 328 (C.D. Cal. 2016) (internal quotations omitted). To do so, the court looks at the proportion of the payments with respect to the settlement amount, along with the actions that the named plaintiffs have taken to protect the class, the degree to which the class benefitted from those actions, and the amount of time and effort the named plaintiffs expended in pursuing the litigation. *Id.* (internal quotations omitted).

Here, each SCCM has benefited from the work of the named Plaintiffs. *See* ECF No. 42 ¶ 21. The proposed service payments of $10,000 each to the Named Plaintiffs are fair and should be approved. Rekhi Decl. ¶ 13; *see also* ECF Docs. 45, 46, and 47. Similar service awards have been approved in our jurisdiction. *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 3087073, at *4 (W.D. Wash. May 31, 2016) (finding incentive award of $10,000 is reasonable.); *Morris v. FPI Mgmt., Inc.*, No. 2:19-CV-0128-TOR, 2022 WL 3013076, at *7 (E.D. Wash. Feb. 3, 2022) (approving payment of service awards in the amount of $10,000 each) *Helde v. Knight Transportation, Inc.*, No. 2:12-CV-00904-RSL, 2017 WL 4701323, at *2 (W.D. Wash. Oct. 19, 2017)(Same); *Hallman v. Wells Fargo Bank, N.A.*, No. 2:18-CV-01190 JLR, 2021 WL 9567170, at *1 (W.D. Wash. Mar. 2, 2021) (finding $10,000 service award reasonable where the total class fund was $2,000,000). Further, each Settlement Class and Collective member's award amount was calculated in the same way, using the same assumptions and data. Accordingly, this factor weighs in favor of approval.

## IV.   CONCLUSION

The Settlement resulted from an arm's-length negotiation between counsel, which resolves a *bona fide* dispute over alleged unpaid overtime wages. The settlement is fair, reasonable, and adequate pursuant to Rule 23 and the FLSA. Accordingly, the Plaintiffs respectfully request that this Court grant final approval of the Settlement Agreement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 15

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

RESPECTFULLY SUBMITTED AND DATED this 1st day of June, 2023.

                           REKHI & WOLK, P.S.

               By: *s/ Hardeep S. Rekhi*
                   Hardeep S. Rekhi, WSBA #34579
                   Email: hardeep@rekhiwolk.com
                   Gregory A. Wolk, WSBA #28946
                   Email:  greg@rekhiwolk.com
                   529 Warren Avenue North, Suite 201
                   Seattle, Washington 98109
                   Telephone: (206) 388-5887
                   Facsimile: (206) 577-3924

                   Toby J. Marshall, WSBA #32726
                   Email:  tmarshall@terrellmarshall.com
                   Erika L. Nusser, WSBA #40854
                   Email: enusser@terrellmarshall.com
                   TERRELL MARSHALL LAW GROUP PLLC
                   936 North 34th Street, Suite 300
                   Seattle, Washington 98103
                   Telephone: (206) 816-6603
                   Facsimile: (206) 319-5450

                   *Attorneys for Plaintiff*

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 16

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA  98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924

# CERTIFICATE OF SERVICE

I hereby certify that I caused the document to which this certificate is attached to be delivered to the following as indicated:

| *Attorneys for Defendant International Marine and Industrial Applicators, LLC* | |
|---|---|
| Melissa Mordy, WSBA #41879<br>Kate Tylee Herz, WSBA #40640<br>DAVIS WRIGHT TREMAINE LLP<br>929 180th Avenue, Suite 1500<br>Bellevue, WA 98004-4786<br>Telephone: 425.646.6100<br>Fax: 425.646.6199<br>Email: missymordy@dwt.com<br>          katetyleeherz@dwt.com<br><br>Katie Loberstein, WSBA #51091<br>Scott Prange, WSBA #53980<br>920 Fifth Avenue, Suite 3300<br>Seattle, WA 98104-1610<br>Telephone: 206.622.3150<br>Fax: 206.757.7700<br>Email: katieloberstein@dwt.com<br>          scottprange@dwt.com | ☐ Messenger<br>☐ U.S. Mail, postage prepaid<br>☐ Federal Express<br>☐ Facsimile<br>☐ Email<br>☒ ECF |

Declared under penalty of perjury under the laws of the state of Washington dated at Seattle, Washington this 1st day of June, 2023.

*/s/ Jeff Mead*
Jeff Mead, Paralegal

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO.: 2:22-cv-00339-BJR - 17

**Rekhi & Wolk, P.S.**
529 Warren Ave N., Suite 201
Seattle, WA 98109
Phone: (206) 388-5887
Facsimile: (206) 577-3924